# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TEXAS
### AUSTIN DIVISION

| | | |
|---|---|---|
| **PENHALL COMPANY,** *Plaintiff* | § § § | |
| **v.** | § § § | |
| **ARCHER WESTERN CONSTRUCTION, LLC D/B/A GREAT HILLS CONSTRUCTORS; SUNDT CONSTRUCTION, INC.; AND ARCHER WESTERN CONSTRUCTION, LLC AND SUNDT CONSTRUCTION, INC. D/B/A GREAT HILLS CONSTRUCTORS,** *Defendants* | § § § § § § § § § § | **Case No. 1:24-CV-01170-SH** |

## ORDER

Now before the Court are Defendants' Motion for Traditional Summary Judgment, filed October 1, 2025 (Dkt. 24); the associated response and reply briefs; and Defendants' Brief in Response to the Court's December 4, 2025 Order Regarding Subject Matter Jurisdiction, filed December 19, 2025 (Dkt. 32).

## I.    Jurisdiction

Plaintiff Penhall Company, a California corporation, brings this breach of contract suit against Defendants Archer Western Construction, LLC d/b/a Great Hills Constructors, an Illinois limited liability company; Sundt Construction, Inc., an Arizona corporation; and Great Hills Constructors, a joint venture partnership between Archer Western and Sundt (collectively, "Great Hills"). Penhall sued in the 200th Judicial District of Travis County, Texas against Archer Western. Dkt. 1-4. Sundt removed to this Court on the basis of diversity jurisdiction under 28 U.S.C. § 1332, alleging that the amount in controversy exceeds $75,000 and complete diversity exists between the parties. Dkt. 1. Great Hills consented to the removal. Dkt. 2.

Because the pleadings and notice of removal did not identify and allege the citizenship of each member of Great Hills, a limited liability company, the Court ordered Sundt to file a brief identifying the citizenship of each Great Hills member to satisfy its "independent obligation to assess subject matter jurisdiction before exercising the judicial power of the United States." *SXSW, LLC v. Fed. Ins.*, 83 F.4th 405, 407 (5th Cir. 2023); Dkt. 31. Defendants timely complied, showing that all Defendants are citizens of either Illinois or Arizona and therefore are diverse from Penhall, a corporation incorporated, and with its principal place of business, in California. Dkt. 32.

The Court is satisfied that subject matter jurisdiction exists under 28 U.S.C. § 1332(a) because the amount in controversy exceeds $75,000 and there was complete diversity of citizenship between the parties when the case was removed on September 30, 2024. *Vantage Drilling Co. v. Hsin-Chi Su*, 741 F.3d 535, 537 (5th Cir. 2014).

## II.   Background

Penhall sues Great Hills for more than $1 million in damages, alleging multiple breaches of a Subcontract Agreement effective March 10, 2022 for a highway construction project in Austin, Texas. Plaintiff's Second Amended Petition, Dkt. 1-10. Penhall alleges that Great Hills breached the Subcontract by failing to (1) provide seven-hour working windows and (2) execute proper road closures, (3) pay for equipment damage and maintain slurry pits no more than 15 miles from the project site, and (4) pay for additional work by Penhall and its costs for crew members and machinery on the project site. *Id.* ¶ 43. Defendants seek summary judgment on all claims.

## III.   Legal Standards

Summary judgment is proper when the moving party shows "there is no genuine dispute as to any material fact and the movant is entitled judgment as a matter of law." FED. R. CIV. P. 56(a). A genuine dispute of material fact exists when the "evidence is such that a reasonable jury could

return a verdict for the nonmoving party." *Davis v. Fort Bend Cnty.*, 765 F.3d 480, 484 (5th Cir. 2014) (citation omitted).

The party seeking summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (citation omitted). If the moving party meets its initial burden, the burden then shifts to the nonmoving party "to go beyond the pleadings and by her own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial." *Davis*, 765 F.3d at 484 (cleaned up).

When ruling on a motion for summary judgment, "the court must draw all reasonable inferences in favor of the nonmoving party, and it may not make credibility determinations or weigh the evidence." *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000).

Because this case is before the Court on diversity jurisdiction, Texas substantive law applies. *Jack v. Evonik Corp.*, 79 F.4th 547, 555 (5th Cir. 2023).

### IV.  Analysis

Great Hills argues:

1. Penhall failed to strictly comply with the notice provisions in the Subcontract by submitting notice to Great Hills timely and in proper format;

2. Defendants Archer Western Construction, LLC and Sundt Construction, Inc. cannot be liable to Penhall for breach of contract because they are not parties to the Subcontract; and

3. Each asserted claims fails for additional grounds.

The Court finds the first issue dispositive. Because there is no genuine issue of material fact that Penhall failed to provide notice of breach timely and by the form required in the Subcontract for all its claims, Penhall's claims are waived as a matter of law.

**A. None of Penhall's Notices Satisfied the Subcontract**

Article 4.3 of the Subcontract mandates that Penhall provide initial notice of any claim "within (5) days after starting the work" impacted by the claim if impacts were unforeseen, or "five (5) days prior to starting the work" impacted by the claim if foreseen. Dkt. 28-1 at 8. The initial notice and claim "must be sent by certified or registered mail, or by courier providing proof of delivery; email or fax are not an acceptable method of delivery." *Id.* The same provision states:

> Subcontractor expressly acknowledges, consents, and agrees to the time, content, records, and delivery requirements of both the Initial Notice and Claim, that the Initial Notice and Claim requirements ***will be strictly enforced, are material terms of this Subcontract***, are necessary for the Contractor to mitigate adverse consequences arising out of or related to Subcontractor's Claim, that the Contractor ***will be prejudiced*** if the Initial Notice and Claim requirements are not followed by the Subcontractor, ***and agrees that any failure on the part of the Subcontractor to submit the Initial Notice or the Claim in strict accordance with the requirements contained within this article, will constitute a waiver of the Subcontractor's right to pursue the Contractor or the Contractor's surety for the Claim***.

*Id.*

The Court finds that this provision in the Subcontract is not ambiguous and construes is as a matter of law. *Crane v. Rave Rest. Grp., Inc.*, 552 F. Supp. 3d 692, 700 (E.D. Tex. 2021) ("If the Court determines that the language can be given a certain or definite legal meaning or interpretation, then the contract is not ambiguous and we will construe it as a matter of law.") (cleaned up), *aff'd*, No. 21-40880, 2023 WL 3735567 (5th Cir. May 31, 2023) (per curiam). Under the Subcontract, failure to strictly comply with the notice provision constitutes waiver. The notice provision is a material part of the bargained-for exchange in the Subcontract, which must be enforced as written. *Nicholas Petroleum, Inc. v. Mid-Continent Casualty Co.*, No. 05-13-01106-CV, 2015 WL 4456185, at *5 (Tex. App.—Dallas July 21, 2015, no pet.) (citing *Lewis v. Foxworth,* 170 S.W.3d 900, 903 (Tex. App.—Dallas 2005, no pet.)).

Penhall does not dispute, and there is no genuine issue of material fact, that none of its initial notices fully satisfied Article 4.3.

| | Claim | Date Occurred | Date of Initial Notice | Method of Initial Notice | Cite[1] |
|---|---|---|---|---|---|
| 1 | Short work windows | 2022 | April 12, 2023 May 15, 2023 June 12, 2023 | Hand delivery Email Mail | ¶¶ 13-14 |
| 2 | Road closures | June 22, 2024 June 24, 2024 June 28, 2023 | July 2, 2023 | Hand delivery and email | ¶¶ 18-19 |
| 3 | Slurry pit distance and equipment damage | Slurry pit: 97 days from April 27, 2022 to July 27, 2023 Equipment damage: July 15, 2023 | August 7, 2023 July 25, 2023 | Hand delivery, mail, and email | ¶¶ 22-26 & pp. 132, 139-46 |
| 4 | Additional mobilization | June 2023 | November 28, 2023 | Invoice | ¶¶ 29-35 & p. 153 |

Only the notice for the last road closure claim (on July 2, 2023) was timely sent, and it was sent by email and hand delivery rather than the means required under Article 4.3: "certified or registered mail, or by courier providing proof of delivery." The remaining initial notices were late – some by many months – and none was submitted by the agreed means.

The Court finds that there is no genuine issue of material fact that none of Penhall's initial notices complied with the Subcontract, which required strict compliance. As a matter of law, its claims are waived.

## B. Penhall's Arguments Are Unavailing

Penhall makes several arguments for denying summary judgment that it waived its claims by failing to strictly comply with the written notice requirements. Dkt. 28 at 11, 15.

---

[1] Citations are to the Affidavit of Chris Bourg, Penhall's Region Vice President, Advanced Services, and supporting exhibits. Dkt. 28-4 at 1-9.

### 1.  The Doctrine of Substantial Compliance Does Not Apply

First, Penhall relies on the doctrine of substantial compliance to contractual notice provisions and contends that strict compliance was immaterial. Penhall correctly argues that the doctrine of substantial compliance is well-established under Texas law. *S. Tex. Elec. Coop. v. Dresser-Rand Co.*, 575 F.3d 504, 507 (5th Cir. 2009). The doctrine "excuses a party's deviations from a contractual requirement, but only if those deviations do not severely impair the purpose of the requirement." *Id.* at 508. Substantial compliance is a question of fact. *Elmen Holdings, L.L.C. v. Martin Marietta Materials, Inc.*, 86 F.4th 667, 678 (5th Cir. 2023).

The Court finds as a matter of law that the doctrine of substantial compliance does not apply to the notice provision. The parties agreed in Article 4.3 that the initial notice and claim requirements would be strictly enforced, are material terms, and failure to comply would cause prejudice. While Penhall relies on *Dresser-Rand*, the Fifth Circuit in that opinion distinguished *PYCA Indus., Inc. v. Harrison Cnty. Waste Water Mgmt. Dist.*, 177 F.3d 351, 369-70 (5th Cir. 1999), on the basis that "the contract in *PYCA* explicitly made a failure to strictly comply with the written notice provision a basis for waiver. The contract here does not." *Dresser-Rand*, 575 F.3d at 507-08 (citation omitted). Article 4.3 makes failure to strictly comply with the written notice provision a basis for waiver of Penhall's claims.[2]

### 2.  Penhall's Failure to Follow the Notice Requirements Prejudiced Great Hills

Next, Penhall contends that strict enforcement would be disproportionate, amounting to an extreme forfeiture or penalty disfavored under Texas law. Texas courts excuse non-performance of a condition precedent if the condition's requirement "(a) will involve extreme forfeiture or

---

[2] The Court agrees with Penhall that Great Hills' reliance on *James Constr. Grp., LLC v. Westlake Chem. Corp.*, 650 S.W.3d 392, 405-09 (Tex. 2022), is unavailing. The Texas Supreme Court held in *James* that substantial compliance with a requirement for written notice as a condition precedent requires a writing. *Id.* at 409. Here, Penhall submitted written notices, albeit untimely and by noncompliant methods.

penalty, and (b) its existence or occurrence forms no essential part of the exchange for the promisor's performance." *Varel v. Banc One Capital Partners, Inc.*, 55 F.3d 1016, 1018 (5th Cir. 1995) (quoting *Lesikar Constr. Co. v. Acoustex, Inc.,* 509 S.W.2d 877, 881 (Tex. Civ. App.—Fort Worth 1974, writ ref'd n.r.e.)). Texas courts have examined whether performing the condition precedent was the object of the contract or merely incidental to it, and whether not performing it caused any loss. *Id.*

The Subcontract explicitly states that Great Hills "will be prejudiced" if the initial notice time and delivery requirements are not followed. Article 4.3, Dkt. 28-1 at 8. Penhall's argument that Great Hills was not prejudiced by the delay therefore is foreclosed as a matter of law. Article 4.3 also explains that the notice and claim provisions "are necessary for the Contractor to mitigate adverse consequences arising out of or related to Subcontractor's Claim." *Id.* Penhall's failure to timely notify Great Hills of its claims cost Great Hills the opportunity to mitigate them.

### 3.  Parol Evidence Cannot Alter the Subcontract

Penhall also asserts that a seven-hour production minimum in a May 2020 quote became part of the Subcontract via a March 2021 letter of intent. The Subcontract contains an integration clause at Article 13.5. Dkt. 28-1 at 20 (stating that the agreement "represents the entire and integrated agreement between the parties hereto and supersedes all prior negotiations, representations, or agreements, either written or oral," and that terms "on any other written documents . . . are not binding on the Contractor and Subcontractor"). The Court agrees with Great Hills that the quote is parol evidence that cannot alter the Subcontract's terms. *Barrow-Shaver Res. Co. v. Carrizo Oil & Gas, Inc.*, 590 S.W.3d 471, 483 (Tex. 2019).

### 4. The Delay Provision Does Not Apply

Finally, Penhall contends that Article 4.4 of the Subcontract "expressly provides an extension of time to submit written notice for delays." Dkt. 28 at 18. To the contrary, the delay clause in Article 4.4 requires full compliance with the initial notice and claim provisions:

> If the progress of the Subcontractor's Work is substantially delayed . . . through no fault or responsibility of the Subcontractor *and the Subcontractor has fully complied with the Initial Notice and Claim provisions of this Agreement,* then the Contractor shall extend the time for the performance of Subcontractor's Work by Change Order and Subcontractor shall be entitled to recover its reasonable costs associated with such delay.

Dkt. 28-1 at 8. The Court finds that Article 4.4 does not affect the initial notice and claim analysis.

### V.   Conclusion

Because the Court finds Penhall waived its claims by failing to strictly comply with the notice provision, as required in the Subcontract, it need not reach Great Hills' additional arguments. The Court **GRANTS** Defendants' Motion for Summary Judgment (Dkt. 24) and will enter judgment for Great Hills by separate order.

**SIGNED** on March 17, 2026.

SUSAN HIGHTOWER
UNITED STATES MAGISTRATE JUDGE